IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

J & J Sports Productions Inc.,                )      No. CIV 12-550-TUC-FRZ-DTF
                                              )
            Plaintiff,                        )      **REPORT AND RECOMMENDATION**
                                              )
vs.                                           )
                                              )
                                              )
Francisco Arvizu, individually and dba        )
Pancho's Cantina & Grill,                     )
                                              )
            Defendant.                        )
                                              )
_____)

Pending before the Court is Plaintiff's Application for Default Judgment pursuant to Federal Rule 55(b). (Doc. 14.) In accordance with the Rules of Practice of the Court, LRCiv 72(a), this matter was referred to Magistrate Judge Ferraro for Report and Recommendation. (Doc. 9.) The Magistrate Judge recommends that the District Court, after its independent review of the record, enter default judgment in the amount of $3400.

**FACTUAL AND PROCEDURAL HISTORY**

In the Complaint, Plaintiff J & J Sports Productions, Inc. alleges it was granted the exclusive rights to distribute "Fight of the Year: the Rematch!": Juan Manuel Marquez v. Juan Diaz, on Saturday, July 31, 2010. Plaintiff alleges Defendant Arvizu owns Pancho's Cantina and Grill in Douglas, Arizona, and the cantina unlawfully intercepted and broadcast the fight. The Complaint alleges three causes of action: (1) violation of 47 U.S.C. § 605, (2) violation of 47 U.S.C. § 553, and (3) conversion.

1        Defendant Francisco Arvizu was personally served on October 11, 2012. (Doc. 11.)

2   He failed to file an answer, response, or make any other appearance in this case. The Clerk

3   of Court entered default on December 17, 2012. (Doc. 13.) In the pending application for

4   default, Plaintiff asks for judgment only on its claims pursuant to 47 U.S.C. § 605 and

5   conversion. (Doc. 14-1 at 8.)

6        In support of its motion, Plaintiff provides an affidavit from investigator Gary W.

7   Turner who states that he observed a preliminary bout, broadcast by J & J Sports as part of

8   the Marquez vs. Diaz fight, playing at Pancho's Cantina on July 31, 2010. (Doc. 14-3 at 4.)

9   The fight was shown on three televisions, each approximately 54 inches. (*Id.*) When Turner

10  arrived at 7:01 p.m. there were ten patrons in the bar, and when he left at 7:35 p.m. he

11  observed 12 patrons. (*Id.* at 3, 5.) For an establishment with an unknown capacity, the

12  president of J & J Sports avers it would have cost Defendant the minimum sublicense fee of

13  $1200 to obtain legal rights to broadcast the fight. (Doc. 15 at 3, 11.)

14  **DISCUSSION**

15       After the entry of default, a court may issue a default judgment against a non-

16  appearing party. Fed. R. Civ. P. 55(b)(2). The decision to issue judgment is a matter left to

17  the sound discretion of the court. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

18  "Factors which may be considered by courts in exercising discretion as to the entry of a

19  default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of

20  plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at

21  stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the

22  default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules

23  of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470,

24  1471-1472 (9th Cir. 1986). When a court considers the entry of default judgment, the

25  well-pleaded "factual allegations of the complaint, except those relating to the amount of

26  damages, will be taken as true." *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir.

27  1977).

28

1

<u>Judgment</u>

2   The Court finds J & J Sports is entitled to a default judgment. The Court first reviews

3   the sufficiency of the Complaint and the merits of Plaintiff's claims.

4   Section 605 forbids the unauthorized reception and broadcast of wire or radio

5   communications and provides for statutory damages of "not less than $1,000 or more than

6   $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II).  If "the violation was

7   committed willfully and for purposes of direct or indirect commercial advantage or private

8   financial gain, the court in its discretion may increase the award of damages, whether actual

9   or statutory, by an amount of not more than $100,000 . . . ." 47 U.S.C. § 605(e)(3)(C)(ii).

10  Section 553 forbids the unauthorized reception of cable service and provides for statutory

11  damages of "not less than $250 or more than $10,000 as the court considers just."  47 U.S.C.

12  § 553(c)(3)(A)(ii).  If "the violation was committed willfully and for purposes of commercial

13  advantage or private financial gain" damages may be enhanced by up to $50,000.  47 U.S.C.

14  § 553(c)(3)(B). Finally, in Arizona "[c]onversion is any act of dominion wrongfully asserted

15  over another's personal property in denial of or inconsistent with his rights therein." *Scott*

16  *v. Allstate Ins. Co.*, 553 P.2d 1221, 1225, 27 Ariz. App. 236, 240 (1976).

17  Plaintiff has sufficiently pled the claims that Defendant violated either § 553 or § 605,

18  although which is unclear. As conceded by Plaintiff, it does not know by what method,

19  satellite or cable, the program was transmitted. (Doc. 14-1 at 8.) The Court need not resolve

20  this issue, however, because the Court's damages award is appropriate under either statute.

21  *See Joe Hand Promotions v. Kostopoulos*, No. CV-10-2457-PHX-NVW, 2011 WL 1656789,

22  at *2 (D. Ariz. May 3, 2011). The Court concludes that, as pled, Plaintiff's claims appear to

23  have merit – Plaintiff held exclusive distribution rights over broadcast of the fight and

24  Pancho's Cantina displayed it without buying a proper license. Because Defendant has not

25  appeared, the Court has no basis to conclude the limited material facts are in dispute. Thus,

26  *Eitel* factors two, three and five favor a default judgment.

27  On balance, the remaining factors support the Court granting Plaintiff's application.

28  Because Defendant failed to appear, J & J Sports would be without recourse should its

1   motion be denied. Based on the recommended damages award, the amount at stake is not so
2   great as to weigh against entering a default judgment. There is no evidence to suggest the
3   default was a matter of excusable neglect. Finally, despite the policy favoring decisions on
4   the merits, that is not possible in this case because Defendant did not appear. The only
5   remaining issue is the amount of damages.

6       Damages

7       J & J Sports moves for statutory damages of $10,000. Plaintiff further moves for
8   enhanced damages in the amount of $100,000, asserting the violation was committed
9   "willfully and for purposes of direct or indirect commercial advantage or private financial
10  gain." *See* 47 U.S.C. § 605(e)(3)(C)(ii). In addition, it seeks $1200 for conversion. By way
11  of a supplemental declaration, Plaintiff advised the Court that a second action had been filed
12  against Defendant for signal piracy. (Doc. 14-4.) Based on Defendant being a repeat violator,
13  in addition to other factors, Plaintiff seeks maximum enhanced damages. The Court finds
14  these amounts unwarranted under the circumstances present in this case.

15      In choosing the amount of statutory damages, courts should seek an amount that will
16  deter future violations without destroying the defendant. *Kingvision Pay-Per-View Ltd. v.*
17  *Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir. 1999). In determining enhanced damages,
18  "[c]ourts generally consider factors such as repeat violations, substantial unlawful monetary
19  gains, significant actual damages to plaintiff, advertising, cover charges, or charging
20  premium menu and drink prices . . . [but some] courts find the mere unauthorized showing
21  of a program sufficient to award enhanced damages because given the low probability of
22  accidentally showing it, it must have been done willfully and for profit." *Kostopoulos*, 2011
23  WL 1656789, at *3 (quoting *J & J Sports Prods., Inc. v. Miramontes*, No. CV-10-2345-
24  PHX-FJM, 2011 WL 892350, *2 (D. Ariz. 2011)).

25      It would have cost Defendant $1,200 to license the fight legally. Statutory damages
26  should be at least this amount plus an amount that would deter future violations. The record
27  reflects little to justify enhanced damages beyond the fact of the piracy itself. The impact of
28  the piracy appears limited, there were few patrons and the bar was located in a small border

1    town. *See J & J Sports Prods., Inc. v. Olivares*, No. 1:10-CV1708-LJO-DLB, 2011 WL
2    587466, at *3 (E.D. Cal. Feb. 9, 2011) (finding minimal impact when establishment in rural
3    area, with three televisions and sixty patrons, although awarding $60,000 in damages); *J &*
4    *J Sports Prods., Inc. v. Tilakamonkul*, No. 1:10-CV-1705-AWI-GSA, 2011 WL 2414550,
5    at *4 (E.D. Cal. June 10, 2011) (increasing damages because establishment within
6    incorporated city limits and in very good condition, even though only eight patrons present).

7        There were no "substantial unlawful monetary gains" for Defendant (the record
8    reflects that no more than 12 patrons were observed in the bar), and no cover charge or food
9    premium was observed to be in effect. Further, there is no evidence of "significant actual
10    damages to plaintiff." Other than the lost license fee, Plaintiff states that it's "impossible" to
11    calculate the damages it sustained. (Doc. 14-1 at 10.) Advertising consisted of a relatively
12    small handwritten sign on the door indicating the fight would be shown on that date. (Doc.
13    14-3 at 9.)  Plaintiff argues that capacity of the establishment is a relevant factor, but it then
14    states the capacity of Pancho's Cantina is "unknown." (Doc. 14-1 at 14.) Although Plaintiff
15    labels Defendant as a repeat offender, the second case filed against him is still pending. *See*
16    *Joe Hand Promotions, Inc. v. Arvizu*, No. 12-CV-0591-JGZ (D. Ariz. filed Aug. 6, 2012).
17    Because the interception in this case occurred prior to the complaint being filed in the other
18    case, there is no basis upon which to conclude that enhanced damages are necessary to deter
19    future conduct. *See J & J Sports Prods., Inc. v. Basto*, No. C10-5122-PJH, 2011 WL
20    2197756, at *4 (N.D. Cal. June 6, 2011) (finding plaintiff failed to establish that the adverse
21    consequences of other cases had failed to deter because piracy at issue occurred before other
22    judgments).

23        The Court finds a statutory award of twice the licensing fee, $2400, to be sufficient
24    deterrent. Because Defendant willfully broadcast the program unlawfully in a commercial
25    establishment for the entertainment of its customers, enhanced damages are appropriate.
26    However, beyond that fact, there is little foundation for significant enhancement. Therefore,
27    the Court finds $1000 in enhanced damages to be appropriate.

28

1    Finally, J & J Sports moves for conversion damages. The facts supporting the
2    conversion claim are the same as those establishing liability under § 553 or § 605. A plaintiff
3    may not recover twice for the same harm even if it has alleged two different legal theories.
4    *See Burgess v. Premier Corp.*, 727 F.2d 826, 837 (9th Cir. 1984) ("Although the jury found
5    for the doctors on [multiple] claims . . . the doctors are entitled to only one recovery for their
6    out of pocket losses"); *J & J Sports Prods., Inc. v. Frank Little Enters., LLC*, No. DKC-12-
7    0997, 2012 WL 6019366, at *2 (D. Md. Nov. 3, 2012); 25 C.J.S. Damages § 26 (2013).
8    Because Plaintiff has recovered the $1200 licensing fee, conversion damages should not be
9    awarded. *See J & J Sports Prods., Inc. v. Robles*, CV 12-547-TUC-FRZ, 2013 WL 5217465,
10   at *3 (D. Ariz. Sept. 17, 2013).

11

12                                **RECOMMENDATION**

13        The Magistrate Judge recommends the District Court, after its independent review of
14   the record, enter an order Granting Plaintiff's Application for Default Judgment. (Doc. 14.)
15   The Court should enter judgment against Defendant in the total amount of $3400, which
16   includes $1200 for the licensing fee, $1200 for future deterrence and $1000 for enhanced
17   damages, but excludes attorney's fees and costs.

18        The District Court should direct Plaintiff to comply with LRCiv 54.2 and Fed. R. Civ.
19   P. 54(d)(2) in filing its motion for attorney's fees and LRCiv 54.1 and Fed. R. Civ. P.
20   54(d)(1) in seeking its costs. Plaintiff's counsel should be reminded to charge only for hours
21   actually expended on this case, taking into account the boilerplate pleadings and motions
22   used by him in hundreds of other similar actions.

23        Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file
24   written objections within fourteen days of being served with a copy of the Report and
25   Recommendation. A party may respond to the other party's objections within fourteen days.
26   No reply brief shall be filed on objections unless leave is granted by the district court. If
27   objections are not timely filed, they may be deemed waived. If objections are filed, the

28

1    parties should use the following case number: **CV 12-550-TUC-FRZ**.

2            DATED this 28th day of October, 2013.

3

4

5

6

7    _____

8                      D. Thomas Ferraro
                 United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28